# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE



UNITED STATES OF AMERICA,

Plaintiff,

v.

DEREK CALLAWAY,

Defendant.

SEALED UNSEALED 11/1/21 JCJK

Criminal Action No. 21-cr-56

**Filed Under Seal**

## AFFIDAVIT IN SUPPORT OF REQUEST FOR
## EXTRADITION OF DEREK CALLAWAY

I, Assistant United States Attorney Briana Knox, being duly sworn, state that:

1.  I am a citizen of the United States of America and a resident of the State of Pennsylvania. I make this affidavit in support of the request of the United States of America to the United Kingdom of Great Britain and Northern Ireland for the extradition of Derek Callaway.

2.  I graduated from The University of Alabama School of Law. I am licensed to practice law in the State of Virginia. From November 2020 to the present, I have been employed by the U.S. Department of Justice as an Assistant U.S. Attorney for the District of Delaware. My duties are to prosecute persons charged with criminal violations of the laws of the United States. During my practice as an

1

Assistant U.S. Attorney, I have become knowledgeable about the criminal laws and procedures of the United States.

3.     In the course of my duties, I have become familiar with the charges and evidence in the above-captioned case of *United States v. Derek Callaway*, criminal case number 21-cr-56.  The charges arose out of an investigation by the Federal Bureau of Investigation ("FBI") and the U.S. Attorney's Office for the District of Delaware (together, the "U.S. Authorities").  The investigation revealed that from approximately October 2017 through the present, Derek Callaway ("CALLAWAY") engaged in a stalking campaign that began in person while he lived in California and continued after he moved to Delaware using the mail system, telephone, and the internet.  CALLAWAY has since moved to the United Kingdom but has continued to use the telephone, international mail, and the internet to stalk the victims, all of whom are United States citizens living in the United States.

4.     The harassment began with a welcome package at a victim's front door when she lived in the apartment directly above CALLAWAY, then banging loudly at early hours of the morning and leaving urine outside the victim's door.  It then escalated to repeated phone calls, additional victims, threats (including a death threat), websites slandering the victims' names and reputations, and CALLAWAY contacting the victims' employers, friends, and family via both e-mail and traditional

mail. The FBI contacted CALLAWAY in April 2021 to inform him of the damage he was doing to the victims—which he acknowledged—and to request him to stop. CALLAWAY ceased his harassment for approximately three months and then re-engaged with the victims, claiming that the FBI was now in support of him.

## SUMMARY OF THE FACTS OF THE CASE

5. In the spring of 2017, CALLAWAY moved into the apartment unit a floor above Victim 1's unit in a building in Oakland, California. CALLAWAY had no prior relationship with Victim 1 but in October 2017, he left a box containing a cheese platter outside Victim 1's door with a note saying, "Stop by and say hello. I do not bite. Derek." The box was addressed to a person unknown to Victim 1 or her roommate, so Victim 1 brought the box to the building's front desk without opening it.

6. Approximately ten days later, Victim 1's roommate heard loud banging on her apartment door early in the morning, and later discovered circular marks and indentations left on the door. In the ensuing weeks, CALLAWAY made multiple uninvited visits to Victim 1's apartment unit, despite several attempted interventions from both building management and the Oakland Police Department. In or around the middle of November, CALLAWAY left a cup of urine outside the door with a note signed "Derek Callaway, Apt. 1103." In yet another incident in or around early

December, CALLAWAY again banged loudly on the door, and this time, tried to force his way into the unit after Victim 1 opened the door. Victim 1 was able to push CALLAWAY back before he could enter and bolted the door locked. At some point, building management informed CALLAWAY that he would have to vacate the building. CALLAWAY eventually returned his keys and vacated his unit on January 2, 2018.

7.      At the time that CALLAWAY moved out, Victim 1 was on vacation in Mexico with Victim 2. On the same day he returned his keys, CALLAWAY sent a text message to, and left multiple voicemails on, Victim 1's cell phone, despite Victim 1 never providing CALLAWAY with her contact information.

8.      On or about April 19, 2018, CALLAWAY made repeated calls to Victim 1's cell phone. The calls continued from unknown and foreign numbers even after Victim 1 blocked the original number CALLAWAY's calls were coming from, and after Victim 1's voicemail box filled up. CALLAWAY sometimes left voicemails after the numerous calls went unanswered. CALLAWAY's voicemails revealed information he knew about Victim 1, including her employment and that she was getting married. They also included threatening statements like: "Watch your back"; "They will put me away because of you"; and "What are you going to do, you already called the cops." Victim 1 reported the incident to the police due to fears for her safety.

9.     Victim 1 and Victim 2 married in June 2018 and moved into a house in Oakland, California in September 2018. Victims 1 and 2 believed they were safe from CALLAWAY's harassment because he was not aware of this new address. However, on April 22, 2019, Victim 1 was served at her new address with notice of a hearing for a Temporary Restraining Order ("TRO") filed against her by CALLAWAY. CALLAWAY had provided Victim 1's address to the sheriff for service on Victim 1. On or about May 14, 2019, after Victim 1 chose not to attend the TRO hearing for fear of seeing CALLAWAY, CALLAWAY left additional voicemails on the phones of Victim 1 and Victim 2. One of the voicemails stated, "are we having fun yet?" Other voicemails left for Victim 2 stated, "yeah, hope you get this message ni**er...bitch" and "just so you know, I'm coming to fuckin kill you ni**er." Victim 1 and Victim 2 again called the police due to fears for their safety.

10.     In or around February or March 2020, CALLAWAY left Oakland and moved to Milford, Delaware, where he had lived prior to moving to Oakland.

11.     In October 2020, Victim 2 began a new job and updated his LinkedIn profile accordingly. During Victim 2's first week at the company, CALLAWAY sent a false and defamatory email to approximately 50 employees of the company, with the subject line: "My Problems with [Victim 2's full name]." The email contained various attachments, including photos of the TRO paperwork from the case

CALLAWAY filed against Victim 1, and a resume for a person who shared the name of Victim 1's brother.

12.    On November 5, 2020, CALLAWAY sent a false and defamatory email to 27 employees of a company that was a customer of Victim 3's company. Victim 3 had no preexisting relationship with CALLAWAY, Victim 1, or Victim 2. CALLAWAY's email to the employees informed them "of a problem I've been having with the founder of a company that you do business with, [Victim 3's full name] at [name of Victim 3's company]." The email included a link to a website created by CALLAWAY. The website listed false and defamatory grievances and accusations against Victim 1, Victim 2, Victim 3, Victim 2's sister, and Victim 1's brother. The website also included personal information about each individual and offered a reward for any information that led to CALLAWAY obtaining a restraining order.

13.    On December 15, 2020, CALLAWAY sent a false and defamatory email to 272 various individuals directing the recipients to separate websites he created for Victim 1 and Victim 2. The websites listed false and defamatory grievances against each victim – including false allegations of sexual harassment and abuse. The websites stated that CALLAWAY had made the website in order to bring attention to the "evils" of these individuals, in the hopes that others might be spared; or, alternatively, so that others abused by Victim 1 and/or Victim 2 know they are not

alone. The websites also invited viewers to share their own stories of abuse by Victim 1 and Victim 2 through a submission form.

14. In and around January and February 2021, CALLAWAY sent letters and packages in the mail to several associates of the victims including: Victim 2's mother; Victim 2's ex-girlfriend from approximately 14 years ago; Victim 3's wife; Victim 3's former roommate from 20 years ago; Victim 1's mother; a friend of Victim 2; a neighbor of Victim 1 and Victim 2; and Victim 3's brother's father-in-law. The letters falsely accused Victim 1, Victim 2, and/or Victim 3 of harassment and abuse, and sought help in stopping the abuse. The packages contained copies of the TRO filing. The packages, which were sent from post offices in Delaware, were mailed to addresses in California and New York.

15. In the following weeks, CALLAWAY sent several additional false and defamatory emails that targeted Victim 2's sister, Victim 3, and Victim 3's company. One email that CALLAWAY sent directly to the boss of Victim 2's sister had the subject line: "[Victim 2's sister's full name] is a Rapist." CALLAWAY also made an online submission to the employer of Victim 2's sister on a customer service platform that had the subject line: "Stop It With the Electronic Rape Already."

16. On March 5, 2021, CALLAWAY left more than 30 voicemails on Victim 2's phone within the span of minutes. The voicemails included messages like: "pick

up your phone, it's Derek Callaway, I'm gonna drive you crazy..." and "so you like harassing people, huh? Ok, this'll be old school electronic harassment." CALLAWAY continued to harass his victims with repeated daily calls until the FBI interviewed him over the phone on or about April 6, 2021.

17. During that conversation, an FBI Special Agent warned CALLAWAY that his behavior was viewed as threatening, harassing, and intimidating to the victims. During the interview, CALLAWAY admitted to and corroborated the majority of events recorded by the victims. CALLAWAY further admitted that he set up a computer program to automatically call the victims repeatedly. In addition, CALLAWAY admitted that a lot of what he did was "stupid"; that it was harassment; and that a reasonable person in the victims' position would feel threatened and significantly emotionally distressed. The Special Agent asked CALLAWAY to stop communicating with the victims. At that point, CALLAWAY did not contact the victims again for approximately three months.

18. Beginning on or about July 16, 2021, however, CALLAWAY resumed calling the victims. CALLAWAY called Victim 2 and Victim 3 repeatedly from new telephone numbers and on one occasion left a voicemail where CALLAWAY's voice could be heard in the background. CALLAWAY also began to call the cell phone belonging to Victim 3's spouse.

8

19.     On or about July 19, 2021, Victim 3's mother and father-in-law received a letter in the mail from CALLAWAY. The letter resumes the false and defamatory allegations of harassment against Victims 1, 2 and 3 and Victim 2's sister and falsely indicates that the FBI is in support of CALLAWAY. The letter is signed "Derek Callaway" in handwriting, with "Derek Callaway" printed underneath, as well as the e-mail "ukderek@icloud.com" and a phone number based in the United Kingdom. The sender address on the envelope is "Derek Callaway, 15 Hoff Beck Court, Birmingham, UK B9 4PG." An excerpt of the letter is below:

> I wrote most of you several months back. I'm just providing you with an update that the FBI is now involved with the case. This can be verified with agent Justin Nyadiashi at Baltimore FBI HQ. The phone number is +1(702)236-2046. Apparently, ████ made the statement that I attempted to force my way into her apartment. My question is if that's what she really thought why didn't she show up to one of the restraining order hearings? She had two opportunities to do this. The other part of this that makes no sense is that she's a body builder, so how would I force my way past her? The only reason I was knocking on her door to begin with was to ask to be left alone (the same reason I'm writing you now.)

20.     On or about July 20, 2021, CALLAWAY sent a false and defamatory e-mail blast to Victim 3's entire company. The content of the e-mail is almost identical

to the July 19 letter described above.

21.    As of the date of this affidavit, CALLAWAY continues to contact and harass the victims.

## PROCEDURAL HISTORY OF THE CASE
### The Charging Process

22.    Under the federal law of the United States, a criminal prosecution is commenced when a grand jury files an Indictment. Institutionally, a grand jury, though an arm of the court, is an independent body composed of private citizens—not less than 16 and not more than 23 people—whom the U.S. District Court selects at random from the residents of the judicial district in which the court resides. The purpose of the grand jury is to review the evidence of crimes presented to it by U.S. law enforcement authorities. After independently reviewing this evidence, each member of the grand jury must determine whether there is sufficient evidence to believe that a crime has been committed and that a particular person committed that crime. If at least 12 grand jurors find that the evidence they have reviewed is sufficient to believe that a particular person committed the crime, the grand jury may return an Indictment. An Indictment is a formal written accusation that charges the particular person, now a defendant, with a crime, and identifies the specific laws that the defendant is accused of violating.

10

23.     After a grand jury returns the Indictment, a warrant for the defendant's arrest may be issued at the direction of a United States District Judge or Magistrate Judge.   Under United States law, the arrest warrant is simply a document authorizing a law enforcement officer to take physical custody of a defendant and bring him to court to answer the charges contained in the Indictment.  The type of detail on the face of an arrest warrant regarding the charges against a defendant can vary by district.  The fact that an arrest warrant summarizes the outstanding charges in words, provides only some of the relevant statutory citations, or merely references the Indictment does not alter the validity of the arrest warrant to authorize a defendant's arrest on all of the charges contained in the corresponding Indictment. Under United States law, it is the Indictment, and not an arrest warrant, that controls the specific number and type of offenses with which the defendant is charged.

## The Charges and Pertinent U.S. Law

24.     On August 12, 2021, a grand jury sitting in the District of Delaware returned an Indictment, charging CALLAWAY, with the following federal criminal offenses in violation of the laws of the United States:

Count One:               Cyberstalking, in violation of Title 18, U.S. Code, Section 2261A(2)(B) and 2261(b), which carries a maximum penalty of five (5) years in prison.

Count Two:                    Cyberstalking, in violation of Title 18, U.S. Code, Section
                              2261A(2)(B) and 2261(b), which carries a maximum
                              penalty of five (5) years in prison.

25.    This Indictment was filed with the U.S. District Court for the District of

Delaware. It is the practice of the U.S. District Court for the District of Delaware to

retain the original Indictment and file it with the records of the court. Therefore, I

have obtained a copy of the Indictment from the clerk of the court and have attached

it to this affidavit as **Exhibit 1**. The Indictment in this case was, and remains, filed

under seal.

26.    On August 12, 2021, based on the filing of the Indictment, the Honorable

Jennifer L. Hall, United States District Court for the District of Delaware, issued a

warrant for CALLAWAY's arrest. The arrest warrant remains valid and executable

to apprehend CALLAWAY on the charges set forth in the Indictment. It is the

practice of the U.S. District Court for the District of Delaware to retain the original

arrest warrant and file it with the records of the court. Therefore, I have obtained

from the clerk of the court copies of the arrest warrant for CALLAWAY and have

attached it to this affidavit as **Exhibit 2**. The arrest warrant was, and remains, filed

under seal.

27.    Each count of the Indictment charges a separate offense. Each offense

is punishable under a statute that: was the duly enacted law of the United States at

the time the offense was committed; was the duly enacted law of the United States at the time the Indictment was filed; and is currently in effect.

28.    Each offense is a felony offense punishable under U.S. law by more than one year of imprisonment.  I have attached copies of the pertinent sections of these statutes and the applicable penalty provisions to this affidavit as **Exhibit 3**.

### Elements for Counts One and Two

29.    Counts One and Two charge CALLAWAY with Cyberstalking.  To satisfy its burden of proof and convict CALLAWAY on these Counts, the United States must establish that:

a. CALLAWAY used the mail, any interactive computer service, or any electronic communication service of interstate commerce, or any other facility of interstate/foreign commerce;

b. To engage in a course of conduct;

c. That causes, attempts to cause, or would reasonably be expected to cause substantial emotional distress to another person; and

d. With the intent to kill, injure, harass, or intimidate (or place under surveillance with those intents) that person.

## Summary of the Evidence for Counts One and Two

30.    The United States will meet the elements for Counts One and Two by showing that: (1) CALLAWAY used the mail and electronic communication services of interstate commerce; (2) to engage in a course of conduct; (3) that caused, attempted to cause, and would reasonably have been expected to cause substantial emotional distress to another person; (4) with the intent to harass that person. As discussed in greater detail above, over the course of many months CALLAWAY repeatedly and persistently used the mail, electronic communications, phone calls, and the internet to harass and threaten each victim, putting them in significant distress. He further admitted his conduct to the FBI.

31.    At trial, the United States anticipates relying on the following evidence, among other evidence, to establish the elements required for Counts One and Two:

          a.  Testimony of the victims;

          b.  E-mail communications from CALLAWAY;

          c.  Phone calls and voicemails from CALLAWAY;

          d.  Websites created by CALLAWAY;

          e.  CALLAWAY's statements to the FBI;

          f.  Mailings sent by CALLAWAY; and

          g.  Electronic evidence associated with CALLAWAY's known e-mail

accounts, including subscriber information, IP address information, etc.

## CALLAWAY'S LOCATION

32.     According to information received from UK authorities and CALLAWAY himself, CALLAWAY's address is 15 Hoff Beck Court, Birmingham, UK B9 4PG.

## IDENTIFICATION INFORMATION FOR CALLAWAY

33.     CALLAWAY is a citizen of the United States of America, born on October 23, 1981 in Sussex County, Delaware. CALLAWAY is a white male weighing approximately 155 pounds with a height of approximately 5 feet, 7 inches. CALLAWAY has brown hair and hazel eyes.

34.     Corporal Ryan Sendrick of the Delaware State Police has met CALLAWAY in person in connection with this investigation, and has identified the photograph attached as **Exhibit 4** as CALLAWAY.

## SURRENDER OF PROPERTY

35.     Pursuant to Article 16 of the Annex to the U.S.—UK Extradition Instrument, it is requested that any items relevant to the charged offenses and found in CALLAWAY's possession at the time of his arrest be delivered to the United States if he is found to be extraditable.

## CONCLUSION

36.    The following attachments support this request for the extradition of CALLAWAY:

      a. Exhibit 1 is a copy of the sealed Indictment.

      b. Exhibit 2 is a copy of the sealed arrest warrant against CALLAWAY.

      c. Exhibit 3 is a copy of the pertinent sections of the following statute and its penalties:

          i. Title 18, U.S. Code, Section 2261A(2)(B) and 2261(b).

      d. Exhibit 4 is a copy of a photograph of CALLAWAY.

37.    I have thoroughly reviewed the government's evidence against CALLAWAY and attest that this evidence indicates that CALLAWAY is guilty of the offenses charged in the Indictment.

Executed this 30th day of September, 2021, at Wilmington, Delaware, United States of America.

                         BY: */s/ Briana Knox*
                               Briana M. Knox
                               Assistant U.S. Attorney

Sworn to before me this _30_ day of ___September___, 2021, at

Wilmington, Delaware, United States of America.

_____

Honorable Mary Pat Thynge

Chief United States Magistrate Judge



# SEALED



REDACTED

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA,

      Plaintiff

      v.

DEREK CALLAWAY,

      Defendant.

Criminal Action No. 21-50

Filed Under Seal

## INDICTMENT

The Grand Jury for the District of Delaware charges that:

### GENERAL ALLEGATIONS COMMON TO BOTH COUNTS

1. In the spring of 2017, defendant CALLAWAY moved into the apartment unit a floor above Victim 1's unit in a building in Oakland, California. CALLAWAY had no prior relationship with Victim 1 but in October 2017, he left a box outside Victim 1's door with a note saying, "Stop by and say hello. I do not bite. Derek." The box was addressed to a person unknown to Victim 1 or her roommate, so Victim 1 brought the box to the building's front desk without opening it.

2. Approximately ten days later, Victim 1's roommate heard loud banging on their apartment door early in the morning, and later discovered circular marks and indentations left on the door. In the ensuing weeks, CALLAWAY made multiple uninvited visits to Victim 1's apartment unit, despite several attempted interventions from both building management and the Oakland Police Department. In or around the middle of November, CALLAWAY left a cup of urine outside the door with a note

signed "Derek Callaway, Apt. 1103." In yet another incident in or around early December, CALLAWAY again banged loudly on the door, and this time, tried to force his way into the unit after Victim 1 opened the door. At some point, building management informed CALLAWAY that he would have to vacate the building. CALLAWAY eventually returned his keys and vacated his unit on January 2, 2018.

3. At the time that CALLAWAY moved out, Victim 1 was on vacation in Mexico with Victim 2. On the same day he returned his keys, on or about January 2, 2018, CALLAWAY sent a text message to, and left multiple voicemails on, Victim 1's cell phone, despite Victim 1 never providing CALLAWAY with her contact information.

4. On or about April 19, 2018, CALLAWAY made repeated calls to Victim 1's cell phone. The calls continued from unknown and foreign numbers even after Victim 1 blocked the original number CALLAWAY's calls were coming from, and after Victim 1's voicemail box filled up. CALLAWAY sometimes left voicemails after the numerous calls went unanswered. CALLAWAY's voicemails revealed information he knew about Victim 1, including her employment and that she was getting married. They also included threatening statements like: "Watch your back"; "They will put me away because of you"; and "What are you going to do, you already called the cops." Victim 1 reported the incident to the police due to fears for her safety.

5. Victim 1 and Victim 2 married in June 2018 and moved into a house in Oakland in September 2018. Victims 1 and 2 believed they were safe from CALLAWAY's harassment because he was not aware of this new address. However,

on April 22, 2019, Victim 1 was served at her new address with notice of a hearing for a Temporary Restraining Order ("TRO") filed against her by CALLAWAY. CALLAWAY had provided Victim 1's address to the sheriff for service on Victim 1. On or about May 14, 2019, after Victim 1 chose not to attend the TRO hearing for fear of seeing CALLAWAY, CALLAWAY left additional voicemails on the phones of Victim 1 and Victim 2. One of the voicemails stated, "are we having fun yet?" Other voicemails left for Victim 2 stated, "yeah, hope you get this message ni**er...bitch" and "just so you know, I'm coming to fuckin kill you ni**er." Victim 1 and Victim 2 again called the police due to fears for their safety.

6.    On or about November 24, 2019, CALLAWAY sent an email to Victim 1 and Victim 3 with the subject line "HARASSMENT," falsely accusing them of "harassing and raping" him.

7.    In or around February or March 2020, CALLAWAY left Oakland and moved to Milford, Delaware, where he had lived prior to moving to Oakland.

8.    In October 2020, Victim 2 began a new job and updated his LinkedIn profile accordingly. During Victim 2's first week at the company, CALLAWAY sent a false and defamatory email to approximately 50 employees of the company, with the subject line: "My Problems with [Victim 2's full name]." The email contained various attachments, including photos of the TRO paperwork from the case CALLAWAY filed against Victim 1, and a resume for a person who shared the name of Victim 1's brother. The email falsely alleged harassment by Victim 2.

3

9. On November 5, 2020, CALLAWAY sent a false and defamatory email to 27 employees of a company that was a customer of Victim 3's company. Victim 3 had no preexisting relationship with CALLAWAY, Victim 1, or Victim 2. CALLAWAY's email to the employees informed them "of a problem I've been having with the founder of a company that you do business with, [Victim 3's full name] at [name of Victim 3's company]." The email included a link to a website created by CALLAWAY. The website listed false and defamatory grievances and accusations against Victim 1, Victim 2, Victim 3, Victim 2's sister, and Victim 1's brother. The website also included personal information about each individual and offered a reward for any information that led to CALLAWAY obtaining a restraining order.

10. On December 15, 2020, CALLAWAY sent a false and defamatory email to 272 various individuals directing the recipients to separate websites he created for Victim 1 and Victim 2. The websites listed false and defamatory grievances against each victim – including false allegations of sexual harassment and abuse. The websites stated that CALLAWAY had made the website in order to bring attention to the "evils" of these individuals, in the hopes that others might be spared; or, alternatively, so that others abused by Victim 1 and/or Victim 2 know they are not alone. The websites also invited viewers to share their own stories of abuse by Victim 1 and Victim 2 through a submission form. About a week later, on December 18, CALLAWAY sent a false and defamatory email to Victim 3, along with dozens of other email addresses, stating that he had been harassed by Victim 1 and Victim 2, and that he believed Victim 3 was involved.

11.    In and around January and February 2021, CALLAWAY sent letters and packages in the mail to several associates of the victims including: Victim 2's mother; Victim 2's ex-girlfriend from approximately 14 years ago; Victim 3's wife; Victim 3's former roommate from 20 years ago; Victim 1's mother; a friend of Victim 2; a neighbor of Victim 1 and Victim 2; and Victim 3's brother's father-in-law. The letters falsely accused Victim 1, Victim 2, and/or Victim 3 of harassment and abuse, and sought help in stopping the abuse. The packages contained copies of the TRO filing. The packages, which were sent from post offices in Delaware, were mailed to addresses in California and New York.

12.    On or about January 6, 2021, which was around the same time he began sending the letters and packages, CALLAWAY sent another false and defamatory email to colleagues of Victim 2, claiming sexual harassment and emotional abuse by Victim 2. A couple of weeks later, on or about January 21, 2021, CALLAWAY sent a false and defamatory email to employees at the company where Victim 2's sister worked. The email included a link to a separate website he created for Victim 2's sister that was similar to the websites he created for Victim 1 and Victim 2. CALLAWAY also sent a false and defamatory email to most of the employees of Victim 3's company with a link to a website he created about the company – similar to the other websites he had created.

13.    In the following weeks, CALLAWAY sent several additional false and defamatory emails that targeted Victim 2's sister, Victim 3, and Victim 3's company. One email that CALLAWAY sent directly to the boss of Victim 2's sister had the

5

subject line: "[Victim 2's sister's full name] is a Rapist." CALLAWAY also made an online submission to the employer of Victim 2's sister on a customer service platform that had the subject line: "Stop It With the Electronic Rape Already."

14.    On or about February 10, 2021, CALLAWAY sent a follow-up email to Victim 3's customers and employees falsely accusing Victim 3 of electronic gang rape. On or about February 20 and February 22, 2021, CALLAWAY sent a direct message to Victim 3 on Twitter, before publicly tweeting about the "evil being done by at least one of the [name of Victim 3's company] founders," with a link to the website CALLAWAY created about the company.

15.    On March 5, 2021, CALLAWAY left more than 30 voicemails on Victim 2's phone within the span of minutes. The voicemails included messages like: "pick up your phone, it's Derek Callaway, I'm gonna drive you crazy..." and "so you like harassing people, huh? Ok, this'll be old school electronic harassment." CALLAWAY continued to harass his victims with repeated daily calls until the FBI interviewed him over the phone on or about April 6, 2021.

16.    During that conversation, an FBI Special Agent warned CALLAWAY that his behavior was viewed as threatening, harassing, and intimidating to VICTIMS 1, 2, and 3. The Special Agent asked CALLAWAY to stop communicating with the Victims. At that point, CALLAWAY did not contact the victims again for several months.

17.    Beginning on or about July 16, 2021, however, CALLAWAY resumed calling the Victims. CALLAWAY called Victim 2 and Victim 3 repeatedly from new

6

telephone numbers and on one occasion left a voicemail where CALLAWAY's voice could be heard in the background. CALLAWAY also began to call the cell phone belonging to Victim 3's spouse.

18. On or about July 19, 2021, Victim 3's mother and father-in-law received a letter in the mail from CALLAWAY. The letter resumes the false and defamatory allegations of harassment against Victims 1, 2 and 3 and Victim 2's sister and falsely indicates that the FBI is in support of CALLAWAY.

19. On or about July 20, 2021, CALLAWAY sent a false and defamatory e-mail blast to Victim 3's entire company. The content of the e-mail is almost identical to the July 19 letter described above.

## COUNT ONE
### (Cyberstalking)

20. Paragraphs 1-19 are re-alleged as if fully set forth herein.

21. From on or about January 2, 2018, through on or about July 16, 2021, in the District of Delaware and elsewhere, the defendant, Derek CALLAWAY, with the intent to harass and intimidate another person, specifically Victim 1 and her spouse and intimate partner Victim 2, used facilities of interstate and foreign commerce, including the mail, interactive computer services, and electronic communication services, to engage in a course of conduct that caused, attempted to cause, and would be reasonably expected to cause substantial emotional distress to Victim 1, Victim 2, and members of their immediate family.

All in violation of Title 18, United States Code, Sections 2261A(2)(B) and 2261(b).

7

## COUNT TWO
(Cyberstalking)

22.     Paragraphs 1-19 are re-alleged as if fully set forth herein.

23.     Beginning on or about November 24, 2019, and continuing to on or about July 20, 2021, in the District of Delaware and elsewhere, defendant CALLAWAY, with the intent to harass and intimidate another person, specifically Victim 3, used facilities of interstate and foreign commerce, including the mail, interactive computer services, and electronic communication services, to engage in a course of conduct that caused, attempted to cause, and would be reasonably expected to cause substantial emotional distress to Victim 3 and his spouse and intimate partner.

All in violation of Title 18, United States Code, Sections 2261A(2)(B) and 2261(b).

A TRUE BILL:

Foreperson

DAVID C. WEISS
United States Attorney

BY: _____
Alexander Ibrahim
Briana Knox
Assistant United States Attorneys

DATED: August 12, 2021

CERTIFIED:
AS A TRUE COPY
ATTEST
JOHN A. CERINO, CLERK
BY:
Deputy Clerk

8

F ID
11318270

AO 442 (Rev 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT
for the

District of Delaware

SEALED

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No.   CR 21-56-UNA |
| | ) | |
| | ) | |
| DEREK CALLAWAY | ) | |
| *Defendant* | ) | |

COPY

## ARREST WARRANT

To:      Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*      DEREK CALLAWAY                                              ,
who is accused of an offense or violation based on the following document filed with the court:

☑ Indictment      ☐ Superseding Indictment      ☐ Information      ☐ Superseding Information      ☐ Complaint
☐ Probation Violation Petition      ☐ Supervised Release Violation Petition      ☐ Violation Notice      ☐ Order of the Court

This offense is briefly described as follows:
   18:2261A(2)(B) - CYBERSTALKING (COUNT I & II)

Date:      08/12/2021

*Issuing officer's signature*      Deputy Clerk

City and state:      WILMINGTON, DELAWARE

JOHN A. CERINO; Clerk of Court
*Printed name and title*

| Return | | |
|---|---|---|
| This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____ at *(city and state)* _____ . | | |
| Date: _____ | | |
| | *Arresting officer's signature* | |
| | *Printed name and title* | |

# EXHIBIT 3
## Text of Applicable Statutes

### Title 18, United States Code, Section 2261A(2)(B) - Stalking

Whoever –

with the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person, uses the mail, any interactive computer service or electronic communication service or electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce to engage in a course of conduct that –

causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress to a person described in clause (i), (ii), or (iii) of paragraph (1)(A),

shall be punished as provided in section 2261(b) or section 2261B, as the case may be.

### Title 18, United States Code, Section 2261(b) - Penalties

A person who violates this section or section 2261A shall be fined under this title, imprisoned ... for not more than 5 years . . . or both fined and imprisoned.

# DELJIS WEB PORTAL
Delaware Criminal Justice Information System
DELJIS Phone Number (302) 739-3293

Home　　Contact Us　　Logoff

☐　Night Operation Mode

New Search

## DMV Photo & Signature

Close DMV Image



© Copyright Delaware Criminal Justice information Systems - All Rights Reserved.

CC: आनन्द / CCPY
via chairman
9/30/91 ऋषि